In the Matter of the Estate of IRVING SHUPACK, Deceased.

Surrogate's Court, Queens County, November 5, 1954.

*Arthur C. Parker* for Florence Shupack, petitioner.

*Irving L. Young* for Edward Morrison, as executor and trustee under the will of Irving Shupack, deceased.

*Robert T. Groh,* special guardian for Harold Shupack and another, infants.

SAVARESE, S. Irving Shupack died on the twenty-eighth day of October, 1953, survived by his widow and their two children. He left a will which was admitted to probate on November 24, 1953. Decedent's widow thereafter commenced a proceeding to determine the validity of her notice to elect against the terms of the will and the executor instituted a proceeding to have the will construed. The proceedings were consolidated upon the consent of the interested parties.

The testamentary provisions for the widow appear to exceed the minimal statutory requirement in that she received an outright legacy of $2,500, and the income for life from a trust of one third of the residuum, which will be substantially composed of stock in six close corporations wholly owned by decedent. The trustee is authorized to " hold in the form in which received any securities or other property " owned by testator at the time of his death. However, the trustee's power to reinvest is limited

to United States Government Bonds. Testator endowed his trustee with broad powers, over any realty within the trust corpus, to determine whether property coming into his hands was principal or income, and to exercise various rights that might accrue to him as a security holder. In the paragraph nominating his executor-trustee, testator included a provision exonerating the fiduciary "from all personal liability in the conduct and management of the businesses and properties in said trust."

The widow's arguments in support of her claim to an elective share can be divided for the present purposes into three categories. One of these categories concerns the inclusion within the trust corpus of securities of closed corporations. It is the widow's position that a court cannot intervene in the internal management of corporations, though the entire stock thereof is held by a trustee subject to judicial supervision. From this premise she concludes that the income might be hoarded in the corporate coffers in the guise of reserves for sundry contingencies, depreciation, and liquidation of capital obligations. (See *Boyle* v. *Boyle & Co.*, 136 App. Div. 367, affd. 200 N. Y. 597.) She further questions the power of this court to restrain the trustee from engaging in speculative enterprises through the medium of the corporations. (See *Matter of Doelger*, 254 App. Div. 178, 184, affd. 279 N. Y. 646.) The executor has cited cases indicating that the court is not powerless to protect the income beneficiary despite the interposition of a corporate body between the trustee and the underlying assets. (See *Matter of Auditore*, 247 N. Y. 335; *Matter of McLaughlin*, 164 Misc. 539, and *Matter of Langdon*, 139 Misc. 379.)

Without attempting to reconcile the numerous decisions on this subject, some of which are in square conflict (see *Matter of Kaplan*, 195 Misc. 132), the court will assume that the cases confer latitude upon a trustee as to scope of investment and retention of income where a corporation is interposed, that he would not have if he held the trust *res* directly. A consideration not in issue in any of the cases cited is present in the instant case. A surviving spouse is guaranteed the right to a minimum participation in his deceased spouse's estate. (Decedent Estate Law, § 18.) The particular statute and not the body of law concerning the relative rights of life tenant and remainderman govern what a spouse must receive to defeat the right of election. In short, what may be prescribed by law for the ordinary income beneficiary or life tenant may be insufficient to satisfy the standards created by the Legislature for the benefit of surviving

spouses. (*Matter of Reich*, N. Y. L. J., July 30, 1954, p. 5, col. 4.) This court was given power in the same enactment that created the right of election to make such " direction consistent with the provisions and purposes of this section as the court may deem necessary for the protection of the surviving spouse." (Decedent Estate Law, § 18, subd. 1 par. [h], cl. [9].) It would be a most unusual situation where despite such a grant of power, a court having jurisdiction would be powerless to control a trustee who sought to utilize an estate corporation to give the surviving spouse less than the security or minimum portion contemplated by the Legislature. Expenditures which are attributable solely to corporate status and confer no benefit upon the widow are not payable out of income. Reserves are proscribed save for those purposes from which the widow will derive the exclusive or an apportionable benefit. Funds to be applied for the preservation of the corpus must come from principal. (See *Matter of Adler,* 164 Misc. 544, 556, and Restatement, Trusts, § 233.)

The reasoning and rules here applied would not be appropriate in a situation where the trustee held less than 50% of the voting stock. Since the corporate form cannot be used as a device to infringe upon that which properly belongs to the surviving spouse, nor will it serve to confer a right of election upon the widow in the case at bar. The court has been referred to *Matter of Halperin* (201 Misc. 763) but finds itself unable to agree with the views expressed therein by the learned Surrogate.

There are in the widow's petition numerous allegations of wrongdoing on the part of the trustee. Assuming the allegations to be true they might properly form the basis for a surcharge upon an accounting but are irrelevant in determining the sufficiency of the widow's testamentary share.

The final purported ground for election derives from testator's direction that for purposes of reinvestment the trustee is limited to securities of the United States of America which would, according to the widow, produce income " inadequate to constitute proper provision for your petitioner." The court has not been directed to, nor has independent research disclosed, any case decisive on this point. It is unfortunate, perhaps, that the Legislature did not see fit to preclude the sort of *mortmain* regulation here evident, but this court has no authority to remedy oversights or alter intended law though on occasions it work a hardship. The other alleged grounds for election asserted by the widow are without merit and, accordingly, it is the decision of the court that the widow is not entitled to a right of election.

The construction problems although set forth in three separate paragraphs relate to a single issue. While testator unequivocally authorized his trustee to retain his investments, the trustee contends that the will is not clear as to whether he may or should, actively participate in the management of decedent's enterprises. In the absence of a testamentary direction, the trustee can neither hold nor operate a business. (*Willis* v. *Sharp,* 113 N. Y. 586, 590.) Without doubt the trustee may in the instant case hold all of decedent's investments, but nowhere in the will does the court find an intimation that testator intended that his executors or trustees should interfere with the officers and directors of the business corporations of which testator owned stock. (See *Matter of Kohler,* 231 N. Y. 353.) The logic behind this rule is manifest in the case at bar. The two business corporations which decedent controlled are substantial commercial operations requiring specialized and undivided attention which can best be furnished by persons associated with these enterprises during decedent's lifetime. To permit or direct a trustee to assume the duties of management would also result in an injustice to the trustee in that, absent express testamentary provision, the court could not allow him additional compensation. (*Matter of Hirsch,* 116 App. Div. 367, affd. 188 N. Y. 584.) The decision herein is not to be understood as condoning an abdication of responsibility by the trustee. His obligations as fiduciary include, (a) asserting the interests of the trust beneficiaries, (b) keeping abreast of corporate developments, and (c) protecting his investments. (See *Matter of Kohler,* 231 N. Y. 353, 368, and Cohn, Estate Corporations, 86 U. of Pa. L. Rev. 136.)

The real estate corporations must, however, receive independent treatment. The testator granted his trustee extensive powers over realty " should said trusts at any time contain any real estate." A literal interpretation would make the entire paragraph nugatory as by the terms of the will, the trusts could at no time consist of property other than the securities held by decedent at his death, or government obligations. The court will not adopt such an approach where there is a reasonable alternative. Decedent owned all of the stock in the realty corporations and from a reading of the entire will it is apparent that he intended his trustee to have the power over the real estate held by his corporations, that he expressly granted over realty held outright by the trustee. The court holds that the testator intended his trustee to have plenary managerial control in the instance of the realty corporations. The extensive grant of

powers to the trustee would make effective management by any other person impossible. The duties beyond those which a trustee is normally obliged to perform are compensable pursuant to subdivision 7 of section 285-a of the Surrogate's Court Act.

Proceed accordingly on notice.