In the Matter of the Estate of Raia Wittner, Deceased. Henry L. Wittner, Appellant; Louis S. Adler et al., as Executors of Raia Wittner, Deceased, et al., Respondents.

Submitted October 4, 1950; decided November 30, 1950.

*Arthur L. Gould* for appellant. Appellant has an absolute right of election to take his full share as in intestacy against the will because (a) it fails to give appellant, as decedent's spouse, the prescribed minimum, and (b) the trustees have the potential power to destroy the alleged whittled-down trust (for appellant) by clear and express provisions which allow them to invade the corpus at any time for the benefit of any of decedent's children. (*Matter of Matthews,* 255 App. Div. 80, 279 N. Y. 732; *Matter of Sheppard,* 189 Misc. 367; *Matter of Clark,* 275 N. Y. 1; *Matter of Byrnes,* 260 N. Y. 465; *Matter of Schmidt,* 171 Misc. 95, 257 App. Div. 827, 282 N. Y. 787; *Matter of Phillips,* 266 App. Div. 374.)

*Harold M. Geller* and *Theodore Shulman* for Renate Baum, respondent. Appellant does not have an absolute right of election by reason of the terms and provisions of the will. (*Matter of Winburn,* 265 N. Y. 366; *Matter of Hayes,* 263 N. Y. 219.)

*Israel S. Schwartz* for executors, respondents. Appellant is not entitled to an absolute right of election. (*Matter of Clark,* 275 N. Y. 1; *Matter of Herts,* 165 Misc. 738; *Matter of Wyand,* 253 App. Div. 921; *Matter of Gallien,* 247 N. Y. 195; *Livingston* v. *Ward,* 247 N. Y. 97; *Williams* v. *Jones,* 166 N. Y. 522; *Matter of Eddy,* 173 Misc. 723, 258 App. Div. 860, 283 N. Y. 556; *Matter of Wilson,* 167 Misc. 758; *Matter of Burr,* 168 Misc. 240, 254 App. Div. 825; *Matter of Sheifer,* 178 Misc. 340; *Matter of Tanenbaum,* 258 App. Div. 285; *Matter of Harris,* 150 Misc. 758.)

FROESSEL, J. Petitioner-appellant, the surviving husband of Raia Wittner, has brought this proceeding for a determination pursuant to section 145-a of the Surrogate's Court Act, and subdivision 8 of section 18 of the Decedent Estate Law, of the validity and effect of his election to take an intestate share of her estate against the provisions of her will. The courts below have determined that appellant is not entitled to take or receive absolutely his full intestate share, which would be one third of the estate, since decedent had two children by a prior marriage.

After gifts of jewelry, household furniture and other effects, Raia Wittner's will bequeathed $15,000 in trust for her daughter, and then divided the residue into three equal parts. The first part she gave outright to her son, the second she gave in separate trust for her daughter, and the third in separate trust for appellant. The will granted exceedingly broad discretionary powers to the executors and trustees in the administration of the estate and the trusts, including the following in paragraph " ELEVENTH " thereof: " (o) The Trustees are authorized, in their sole and absolute discretion, in the event of *any* need on the part of *any of my children,* or of my husband, occasioned by misfortune, sickness or by any other reason whatsoever, to pay to or use, apply or expend for the use and benefit of *any of my said children* or of my husband, the *corpus of any trust fund* held for the benefit of *said child or of my husband* to such extent and as often as said Trustees, in their sole and absolute discre-

tion, may determine to be adequate to provide for the reasonable needs and comforts of *any of my said children* or of my husband during such period or periods of need." (Emphasis supplied.)

We are of the opinion that this clause had the effect of giving appellant an absolute right of election (*Matter of Matthews,* 279 N. Y. 732; *Matter of Schmidt,* 282 N. Y. 787; *Matter of Sheppard,* 189 Misc. 367, 370). Certainly by this unambiguous language the testatrix could not have meant, as the courts below have found, that a trust fund could only be invaded for the benefit of its particular income beneficiary. If the testatrix had intended that result, she would never have used the words " any need on the part of any of my children " or " for the use and benefit of any of my said children " or " for the reasonable needs and comforts of any of my said children ". The son was not the income beneficiary of any trust, and since the testatrix obviously intended that the invasion clause was to be for his benefit, as well as for that of the daughter (i.e., " any of my children ") as well as appellant, she could not have meant that the son was to be limited to invading the corpus of his own non-existent trust. The testatrix must have intended that the son be permitted to invade someone else's trust — namely, the trust of appellant and the two trusts of the daughter.

This conclusion is all the more compelling because of the use in the invasion clause of the words " the corpus of any trust fund held for the benefit of said child ". The use of the singular " child " here demonstrates that the testatrix recognized that a trust had been set up for only one of her children — i.e., the daughter. Her language there was precisely descriptive, and significantly different from the language in other parts of the clause where the plural " my children " is used. The inference is unmistakable that the testatrix intended that the two trusts set up for her daughter and the one for appellant should *all* be subject to invasion in the event of sickness or other misfortune falling upon the daughter, the *son,* or appellant.

The courts below have held that appellant is restricted to the exercise of the limited right of election under paragraph (f) of subdivision 1 of section 18 of the Decedent Estate Law, subject to a future accounting proceeding in which the extent and valuation of the estate property will be determined. In this they are in error, because the trust referred to in said section must be

deemed to refer to a substantially beneficial trust and not the kind of illusory disposition which exists here (*Matter of Matthews, supra*). To hold otherwise would be to allow the destruction, in whole or in part, of the trust corpus which the statute clearly contemplates shall be the basis of appellant's income during life; or, to put it otherwise, would permit appellant's rights to " ' be whittled down by the ingenuity of the draftsman of a will or by the design of the [testatrix] to deprive the [appellant] of [his] lawful rights ' " (*Matter of Curley,* 245 App. Div. 255, 257, affd. 269 N. Y. 548), contrary to the well-recognized doctrine that section 18 must be liberally construed in favor of the surviving spouse in order to fulfill " the evident purpose of the Legislature that a surviving spouse should retain the right to claim his or her full intestate share, in spite of any will, unless the instrument should provide substantial equivalents " (*Matter of Byrnes,* 260 N. Y. 465, 470, 474, reargument denied 261 N. Y. 623).

Courts have no right to vary or modify the terms of a will to bring a gift to the spouse within the provisions of section 18. As we said in *Matter of Durand* (250 N. Y. 45, 54), " In declaring a testator's intention  *  *  *  courts are limited to the words which the testator, himself, has used in his will." And at page 55, " Even if we thought that [the testator] would have followed the interpretation which the lower courts have put upon this will, the fact is he did not do so, and the courts cannot reconstruct wills in accordance with the near intention of the maker. *  *  *  No power of revision of wills is intrusted to the courts." And in *Manion* v. *Peoples Bank of Johnstown* (292 N. Y. 317, 321), " Courts are not at liberty to inquire as to a testator's understanding or appreciation of the legal implications of words that were selected for him by a draftsman of his will." It follows that appellant has an absolute right of election under subdivision 1 of section 18.

The order of the Appellate Division and the decree of the Surrogates' Court should be reversed, and the matter remitted to the Surrogates' Court for further proceedings not inconsistent with the opinion herein, with costs payable out of the estate to all parties appearing separately and filing separate briefs.

DESMOND, J. (dissenting). We think that this court should accept the meaning ascribed to the will by both courts below.

So far as is material to the question before us, the will: (1) sets up a trust of $15,000, with income to the daughter until she shall reach the age of thirty-five, at which time the corpus is to be paid to her, and (2) divides the residue into three equal parts, one third to the son outright, one third in another trust with income to the daughter and the corpus to be paid to her at age thirty-five, and the other one third in a trust with income to the husband for life and provisions for the disposition thereof at the husband's death. The will then goes on to say this: "(o) The Trustees are authorized, in their sole and absolute discretion, in the event of any need on the part of any of my children, or of my husband, occasioned by misfortune, sickness or by any other reason whatsoever, to pay to or use, apply or expend for the use and benefit of any of my said children or of my husband, the corpus of any trust fund held for the benefit of said child or of my husband to such extent and as often as said Trustees, in their sole and absolute discretion, may determine to be adequate to provide for the reasonable needs and comforts of any of my said children or of my husband during such period or periods of need."

The Surrogate and the Appellate Division interpreted the quoted language as saying that any invasion of the principal of the husband's trust fund was to be for the benefit of the husband alone. By the decision about to be made, this court is taking a contrary view and holding that the invasion provisions above summarized mean that the husband's trust may be invaded, in case of necessity, not only to take care of the husband's needs, but also for the benefit of either of the two children of testatrix. We think that the will, read as a whole, is at least reasonably susceptible of the meaning put upon it by both courts below, and that, accordingly, this court, although it may have the power so to do, should not attach to the words a different meaning.

This is a problem of interpretation, not of construction. "Interpretation" and "construction" are frequently used interchangeably, but actually have different connotations. Interpretation is an investigation as to what a testator actually meant by the use of certain words, while construction is concerned with the legal effect of the language used (for illustration, see *Matter*

*of Union Trust Co. [Detmold]*, 89 Misc. 69, mod. 170 App. Div. 176, mod. 219 N. Y. 537, 220 N. Y. 657; also, *People ex rel. Twenty-third St. R. R. Co.* v. *Commissioners of Taxes of City of N. Y.*, 95 N. Y. 554, 558, 559; *Manion* v. *Peoples Bank of Johnstown*, 292 N. Y. 317, 321; 1 Davids on New York Law of Wills, p. 733). If a will is written in ambiguous, obscure or contradictory words, the question is as to what the maker really meant, and that question is answered by a process of interpretation, which means discovering the testator's actual intent, and is, thus, essentially, a question of fact. When, on the contrary, the terms, the meaning of which is in dispute, are words of art, that is, words having a fixed legal meaning, then the process is one of construction, that is, of applying to words of art the fixed meanings given them by our law.

Here is the case of a woman drawing an essentially simple will in which she gives an outright bequest to her son, and then erects two trusts for her daughter, and one trust for her husband. The clause above quoted, which provides for invasion of the trusts under certain circumstances, is ambiguous in the sense that it might mean that each trust could be invaded but for the benefit of the beneficiary thereof only, or it might mean that any one or all of the trusts could be invaded for the benefit of the husband, daughter or son, although the son had already been taken care of in the will by an outright bequest. The most that can be said for appellant's position here is that the language could bear the latter meaning. However, the invasion provision, so read, is a most unusual if not unprecedented one, and one that goes far toward destroying the whole general scheme of the will. It is common for a testator, setting up a trust with income to a relative, to provide that the principal of the trust fund may be invaded to take care of unforeseen necessities of the beneficiary, but I doubt if anyone has heretofore heard of a will in which such a trust was opened wide to invasion not only for the beneficiary of that trust, but also for the beneficiary of other trusts in the same will, and for the benefit of a legatee also.

The words used here in the invasion clauses are not words of art, but simple English verbiage, and so they need no construction but only interpretation. Since both courts below have interpreted them as meaning that each trust could be invaded for the

benefit of its income beneficiary only, and since that interpretation is not only not an unreasonable one but a more reasonable and consistent one, we should, even if we have power to do the contrary, exercise judicial self-restraint and let stand the reasonable interpretation arrived at by the two courts which have the primary responsibility of disposing of such factual questions of actual intent.

The order should be affirmed.

LOUGHRAN, Ch. J., LEWIS and CONWAY, JJ., concur with FROESSEL, J.; DESMOND, J., dissents in opinion in which DYE and FULD, JJ., concur.

Ordered accordingly.